# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JUDITH HALLIE, individually and on behalf of a class, <br>         Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br> WELLS FARGO INSURANCE, INC., <br> AMERICAN SECURITY INSURANCE <br> COMPANY, AND ASSURANT, INC., <br>         Defendants. | 2:12-cv-00235-PPS-APR |

## OPINION AND ORDER

Judith Hallie brings this action against Defendants American Security Insurance Company ("ASIC"), Wells Fargo Bank, and Wells Fargo Insurance over forced-placed insurance Wells Fargo put on Hallie's home when she didn't have insurance coverage as required by her mortgage agreement. The defendants moved to dismiss the case initially for failure to state a claim. Those motions were never decided because the case was stayed pending the decision of a similar case before the Seventh Circuit. Then, settlement discussions heated up in a class action in Florida that included Hallie's claims, and this led to further delay. Now the defendants' new Motion to Dismiss is pending. Because Hallie failed to properly opt out of the Florida class settlement, her case has been settled, and she cannot continue to pursue settled claims in this Court. So as explained in this Order, judgment will be granted in favor of the defendants.

## BACKGROUND

This case was stayed in February 2014 pending the outcome of settlement proceedings in a related case that the parties informed the Court might apply to this case as well. (Docket Entry 78.) In October 2014 the defendants notified the Court of the approval of the class action settlement in *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721-FAM (S.D. Fla.). (DE 80.) The defendants' notification stated that the Fladell settlement encompasses Hallie's claims, so I ordered Hallie to file relevant dismissal papers based on the settlement. (DE 81.) In December Hallie, through her counsel, filed a status report disputing the defendants' characterization of the Florida settlement – Hallie said she had filed a timely request for exclusion from the settlement in August 2014, so her claims weren't released. (DE 84.) The defendants responded that Hallie failed to properly opt out of the Florida settlement because she hadn't *personally* signed her request for exclusion, and instead her counsel had sent the letter on her behalf. (DE 85.) Thus, by failing to properly opt out, she was bound by the settlement of the Florida case. Hallie's adherence to this technical requirement has now become the fulcrum of this case. Hallie has not responded to the defendants' argument that her opt-out was improper.

Because the outcome of Hallie's own case hinges on the doings in the Fladell case, I need to step back and talk about the time line in that case in order to put the current dispute into some context. The Fladell class settlement was preliminarily approved on March 17, 2014, and with that approval came the class notice and the

scheduling of deadlines for opting out and the final approval hearing. (DE 95 at 3, DE 95-1.[1]) A class member could opt out of the class and settlement by sending a written request for exclusion to the settlement administrator postmarked 30 days or more before the final approval hearing which was scheduled for September 18, 2014. The opt-out notice had to meet certain requirements that the court set out:

> To be valid, the Request for Exclusion must: (a) identify the case name and number; (b) identify the name and address of the Settlement Class Member; **(c) be personally signed by the Settlement Class Member requesting exclusion**; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class in the Fladell Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Fladell Class Action." Mass or class opt outs shall not be allowed.

(DE 95 at 3; DE 95-1 at 7-8 (¶ 11) (**emphasis** added).) This means Hallie had five months to sign and send a very simple opt-out notice. Yet her lawyer sent a request for exclusion from the settlement class on Hallie's behalf on August 18, 2014. The lawyer signed it; Hallie did not. (DE 84-1 at 2.) The court's instructions could not have been much clearer in their requirement that Hallie sign the opt-out herself – that's what "personally" means. *See* "Personally," Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/personally (last visited Apr. 27, 2015) ("used to say that something was done or will be done by a particular person and not

---

[1] I can and do take judicial notice of filings in the Fladell case. *See, e.g.*, *Bond v. Jpmorgan Chase Bank, N.A.*, 526 Fed. Appx. 698, 699 (7th Cir. 2013) (citing *Keller v. United States*, 657 F.3d 675, 679 n.2 (7th Cir. 2011); *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996)).

by someone else "). The requirement was not opaque or hidden, nor was quick turnaround expected. Nonetheless, Hallie's lawyer sent in the facially defective request for Hallie's exclusion from the class settlement.

There's more: shortly after the parties filed the status report and response regarding Hallie's opt-out, Hallie's counsel moved to withdraw from representing her in this case. (DE 86.) Counsel reported being unable to contact Hallie. Magistrate Judge Rodovich granted that motion. (DE 87.) Then, several days later, Hallie moved to prohibit withdrawal. (DE 88.) Hallie explained that she had maintained lines of communication, but had been on vacation, that her counsel had called the wrong phone number in the past, and that the case was too far along for Hallie to find a new lawyer. Hallie claimed that counsel was negotiating a mortgage modification for her. Hallie's counsel filed a response disputing Hallie's characterizations (DE 90): counsel said Hallie had not been in constant communication, counsel had never used an incorrect phone number, and counsel had informed Hallie that they were not negotiating and would not attempt to negotiate a loan modification, as well as the fact that counsel did not represent Hallie in the foreclosure. Judge Rodovich held a hearing in January 2015 where he denied Hallie's motion seeking to keep her counsel, and set deadlines for the current dispositive motion. (DE 91.) At that hearing Hallie stated that she had opted out, and Judge Rodovich confirmed that she understood she needed to present any argument on that basis to me. Hallie said she understood. (Recording of hearing referenced in DE 91.)

Wells Fargo filed its motion to dismiss (DE 94), which ASIC joined. (DE 96.) Hallie, representing herself when the motion to dismiss was filed, never responded, and has not filed anything at all since the defendants moved to dismiss.

## ANALYSIS

First I must address a matter of form. The present motion is styled a motion to dismiss under Federal Rule of Civil Procedure 41(b), or alternatively under Rule 12(b)(6). Rule 41(b) allows involuntary dismissal upon a defendant's motion due to the plaintiff's failure to prosecute or to comply with the rules or a court order. The defendants don't explain how Rule 41(b) is applicable. The defendants' alternative theory is that Hallie fails to state a claim, so the case should be dismissed under rule 12(b)(6). But that's not quite right, either. The legal doctrine underlying the defendants' argument for dismissal is *res judicata*:

> Where a final judgment has been rendered on the merits of a claim, res judicata protects the finality of that judgment and prevents parties from undermining it by attempting to relitigate the claim. Res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly. In federal court res judicata has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts). Where it applies, res judicata prevents the relitigation of claims already litigated as well as those that could have been litigated but were not.

*Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (citations omitted). "Since res judicata is an affirmative defense, the defendant should raise it and then move for

judgment on the pleadings under Rule 12(c)." *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (citations omitted). Still, the Seventh Circuit has affirmed district court decisions dismissing cases based on *res judicata* even when the trial court mistakenly referred to the decision as coming under Rule 12(b)(6), *see id.*, so the defendants' nomenclature is of no consequence here.

Rule 12(c) is also the proper vehicle for dismissal here if we look at the Fladell settlement as a release of Hallie's claims. The Fladell settlement effects a release of Hallie's claims in this case. "A release is an affirmative defense under Fed. R. Civ. P. 8(c)(1). Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)." *Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 975-76 (7th Cir. 2013) (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 "(reminding that even 'though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint')"). The upshot is that I will construe the defendants' motion as one arising under Rule 12(c).

Here's the big picture: the Fladell class settlement applied to all class members who did not opt out of the settlement. Ms. Hallie was a class member in the Fladell litigation. The class members who did not opt out got relief pursuant to settlement, and cannot pursue the claims covered under the settlement any further. *See, e.g., Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680 (7th Cir. 1987) (the court

approved the class settlement, "thus extinguishing by operation of res judicata the claims of all class members who had not opted out"). There has never been any dispute about whether Hallie's claims in this case sit under the Fladell umbrella, and Hallie's attorney did not object to a stay during settlement proceedings in Fladell. (DE 77.) The only question is whether Hallie opted out such that she may continue to pursue her case in this Court, or whether her claims were resolved in the Fladell settlement, effectively extinguishing her case here.

The requirement that a class member must *personally* sign her opt-out is admittedly technical. But it is enforceable here. It was a clear requirement, and plaintiff's counsel had five months to meet it, yet didn't get around to jotting an eight-line note opting out and mailing it until the day before the deadline. Any deadline-based reason for Hallie not signing herself is a problem of her or her counsel's own making. The personal signature requirement also seems to be a standard requirement in class actions, and it's not onerous. *See, e.g.*, *De Leon v. Bank of Am., N.A.*, No. 6:09-cv-1251-Orl-28KRS, 2014 U.S. Dist. LEXIS 74056, at *18 (M.D. Fla. May 29, 2014) ("The Request for Exclusion must be personally signed by the Settlement Class Member."); *In re Ferrero Litig.*, No. 11-CV-00205-H (CAB), 2012 U.S. Dist. LEXIS 15174, at *13 (S.D. Cal. Jan. 23, 2012) ("The Request for Exclusion must be personally signed by the Class Member."); *Montgomery v. Beneficial Consumer Disc. Co.*, No. 04-CV-2114, 2005 U.S. Dist. LEXIS 3249, at *5-6 (E.D. Pa. Mar. 2, 2005) (same; discussing *In re Household Lending Litig.*, Civ. A. No. 02-1240 CW (N.D. Cal. Apr. 30, 2004)).

The purpose of requiring the class member to actually sign the opt out – as opposed to allowing a lawyer to sign it for her – is to give assurance to the defendants that the class member does not wish to be bound by the settlement. The requirement of a personally signed, individual opt-out notice is rational given the court's interest in avoiding mass or large sub-class opt outs. The section of the preliminary class settlement approval in Fladell ends with this sentence: "Mass or class opt outs shall not be allowed." Class actions and class settlements would lose their effectiveness if internal struggles among different plaintiffs' lawyers and factions of plaintiffs were paired with an easy way to fragment the class. Requiring a personally signed, individual request for exclusion from class settlement heightens the likelihood that each class plaintiff will make an informed, individualized decision whether to opt out, and courts want to encourage this careful decisionmaking process. Hallie's counsel should have well understood this requirement. They are experienced class action consumer lawyers who – according to their Web site – purport to "focus [their] practice exclusively on consumer protection and class action law," but missed this very simple requirement. Web site home page of Edelman, Combs, Latturner & Goodwin, LLC, http://www.edcombs.com/ (last visited Apr. 27, 2015).

Because Hallie's opt-out request was deficient on its face, it was ineffective in opting her out of the Fladell class. Her case is subject to the Fladell settlement. Therefore her continued pursuit of her case here is barred by *res judicata*, and the defendants' motion for judgment in the case is granted under Rule 12(c).

Finally, it's also worth noting that neither Hallie's counsel (before withdrawal) nor Hallie (after withdrawal) has filed anything at all relating to the issue of the effectiveness of the opt-out request. Nothing was filed either in reply to the defendants' response to the plaintiff's status report, or in response to the defendants' motion to dismiss. Judge Rodovich confirmed during the hearing on withdrawal of counsel that Hallie understood she needed to address before me the effectiveness of the opt-out notice in response to the defendants' argument for dismissal, and Hallie said she understood. Yet she filed nothing in response by the March 6 deadline (which came and went over seven weeks ago), nor any request for an extension, nor anything at all. Under this circumstance, where the opt-out was plainly deficient and no argument of any kind (sounding in law, fact, or fairness) has been made, the Court won't go looking for potential fact disputes or possible fairness arguments to defeat dismissal. Where a plaintiff fails to respond to a non-frivolous, dispositive argument the court may infer acquiescence to that argument, and "[t]hat acquiescence operates as a waiver . . . ." *Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001).

**CONCLUSION**

For the foregoing reasons, the defendants' motion for judgment on the pleadings is **GRANTED**. (DE 94.) The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendants Wells Fargo Bank, N.A., Wells Fargo Insurance, Inc. and American Security Insurance Company, and against Plaintiff Judith Hallie. The Clerk of Court is

**DIRECTED** to treat this civil action and any remaining pending motions as **TERMINATED**. All further settings in this action are hereby **VACATED**.

    SO ORDERED.

    ENTERED: April 27, 2015

                                  /s/ Philip P. Simon
                                  **PHILIP P. SIMON, CHIEF JUDGE**
                                  **UNITED STATES DISTRICT COURT**